Smith, J.
This action arises out of a Special Permit granted by the City of Cambridge Board of Zoning Appeal allowing defendant Starbucks Coffee Company to occupy 31 Church Street, Cambridge, as a fast order food establishment. Plaintiffs appealed the grant of the permit to this court pursuant to G.L.c. 40A, §17. Defendants have moved for summary judgment, arguing that none of the plaintiffs has standing under the statute to challenge the zoning board’s decision.
FACTUAL BACKGROUND
Defendant Starbucks Coffee Company (“Starbucks”) is a well-known coffee vendor based in Seattle. In recent years, numerous Starbucks establishments have opened in Massachusetts, including in Cambridge, MA. This action arises from Starbucks’ desire to open an establishment at 31 Church Street in Cambridge (“the property”). Church Street, a heavily trafficked street in Harvard Square which connects Massachusetts Avenue and Brattle Street, is home to a movie theater, various restaurants and specially shops, a folk music venue and other establishments. The subject property at 31 Church Street most recently housed the “Church Street Cafe,” a business serving food and nonalcoholic beverages. Previously, “Steve’s Ice Cream” occupied the premises, operating from 1980 through the early 1990s.
In December 1995, Starbucks applied to the Cambridge Board of Zoning Appeal (“Board”) for a Special Permit to occupy the property as a fast order food establishment. In accordance with G.L.c. 40A, §11, a public hearing was held, and all “parties in interest” were notified.
At the hearing, the Board heard ample testimony and argument about the nature of Starbuck’s business. The statements described Starbucks to the Board as a business with an emphasis on coffee drinks, including cafe lattes, cappuccinos, espressos and a long list of blended coffees. In addition, Starbucks will offer avariety of baked goods, including muffins, scones and brownies. These prepackaged items will not be baked on the premises.
Several Cambridge residents, including some who are now plaintiffs, voiced concern that Starbucks would bring with it increased traffic, double parking problems, increased litter, and the possible demise of other local coffee vendors.[4] In rebuttal, Starbucks argued that the store will attract primarily walk-in, as opposed to vehicular trade and that the store would not create traffic problems or reduce available park- *317 tag, threaten public safety or encourage double parking.[5]
The five-member Board voted 5-0 in favor of granting Starbucks a special permit to operate a fast order food establishment at the location. The Board’s decision was filed -with the Cambridge City Clerk on March 13, 1996.[6] According to the Board’s memorandum of decision, the proposed Starbucks will occupy 600 square feet of retail space on the first floor of a 1,200 square foot lot. The business will include seating for 19 people and will offer both “take out” and “eat-in” service. “Eat-in” patrons will consume coffee and pastries in china cups and plates.
On April 1, 1996, the plaintiffs filed an appeal from the Board’s decision with this court.[7] The appeal claimed that Starbucks does not meet the criteria for issuance of a special permit for a fast order food establishment set forth in §11.31 of the Cambridge Zoning Ordinance. The appeal also asserted that Starbucks will create traffic problems, including double parking by trucks and cars; fumes; litter and other problems, in violation of the requirements for a special permit.
Starbucks moved for summary judgment, contending that none of the plaintiffs have standing to challenge the Board’s decision under G.L.ch. 40, §17A. For the reasons explained below, Starbucks’ motion for summary judgment is ALLOWED.
DISCUSSION A. The Legal Standard
When a zoning decision is appealed to the Superior Court, the court is required to hear the matter de novo and determine the legal validity of the decision of the zoning board upon the facts found by him. G.L.c. 40A §21; Josephs v. Board of Appeals of Brookline, 362 Mass. 290, 295 (1972). However, only a “person aggrieved” may challenge a decision of a zoning board of appeals. G.L.c. 40A §17; Marashlian v. Zoning Board of Appeals of Newburyport, 421 Mass. 719 (1996). A plaintiff is a “person aggrieved” if he suffers some infringement of his legal rights. Circle Lounge & Grille, Inc. v. Board of Appeal of Boston, 324 Mass. 427, 430, 86 N.E.2d 920 (1949). The injury must be more than speculative, Tsagronis v. Board of Appeals of Wareham, 415 Mass. 329, 335, 613 N.E.2d 893 (1993) (Abrams, J., dissenting), but the term “person aggrieved” should not be read narrowly. Marotta v. Board of Appeals of Revere, 336 Mass. 199, 204, 143 N.E.2d 270 (1957). “Aggrieved person” status is a jurisdictional prerequisite. Barvenik v. Board of Aldermen of Newton, 33 Mass.App.Ct. 129, 131 (1992).
A plaintiff who is a “party in interest” as defined by G.L.c. 40A, §11 enjoys a presumption that he or she is a “person aggrieved.” Marotta v. Board of Appeals of Revere, 336 Mass. 199, 204 (1957); Watros v. Greater Lynn Mental Health & Retardation Association, Inc. 421 Mass. 106, 111 (1995). This presumption is rebuttable, however, and recedes when a defendant challenges the plaintiffs status as an aggrieved person and offers evidence supporting his or her challenge. Watros, 421 Mass. at 111. When a defendant challenges the plaintiffs standing and supports that challenge with evidence of lack of aggrievement, the jurisdictional issue must be decided on the basis of the evidence without reference to the presumption. Marotta v. Board of Appeals of Revere, 336 Mass. 199, 204, 143 N.E.2d 270 (1957).
A plaintiff who is not a party in interest does not enjoy the presumption, but still may have standing to challenge a decision of a zoning board of appeals. See Harvard Square Defense Fund, Inc. v. Planning Board of Cambridge, 27 Mass.App.Ct. 491, 195 (1989). A plaintiffs concern, based upon facts and not speculation, regarding increased traffic and decreased parking availability due to a zoning decision is legitimately within the scope of the zoning laws, and may give rise to a finding that the plaintiff is a “person aggrieved.” Marashlian, 421 Mass. at 722; Bedford v. Trustees of Boston University, 25 Mass.App.Ct. 372, 377 (1988).
1. Determining When a Plaintiff is a “Person Aggrieved”: The Barvenik Standard
Defendant’s motion for summary judgment comes before this court against the backdrop of a changing legal standard for determining when a plaintiff is a “person aggrieved.” In 1992, the Barvenik court, examining several older decisions on standing under G.L.ch. 40A, §17, derived several clear principles that have since guided this court’s decisions in this area. Most notably, Barvenik held that to qualify for “person aggrieved" status, a plaintiff must establish, by direct facts and not by speculative personal opinion, that his legal rights or property interests are likely to be adversely affected. Barvenik, 33 Mass.App.Ct. at 132.[8] Furthermore, Barvenik held that to have standing, a plaintiff must “provide specific evidence demonstrating a reasonable likelihood” that the approved use would result in his property or legal rights being more adversely affected than by present uses and activities in the locus or by uses and activities allowed as of right. Id.
In sum, then, Barvenik held that a “person aggrieved” must show, through direct evidence rather than opinion or speculation, that a zoning decision is likely to leave him worse off. As a consequence, Barvenik both clarified the law in this area and made it somewhat more difficult for potential plaintiffs to attain standing.
2. The Impact of Marashlian
Recent decisions, however, have called portions of Barvenik into question. In Marashlian v. Zoning Board of Appeals of Newburyport, 421 Mass. 719 (1996), (O’Connor, J., dissenting, joined by Lynch, J. and Greaney, J.), the Supreme Judicial Court reversed a Court of Appeals decision which had relied heavily on *318 Barvenik. The Marashlian decision directly criticized Barve'nik’s command that a plaintiff must show a substantial likelihood of harm greater than that which could result from a use of the property permissible as of right to have standing. Rather the Marashlian court held that while this factor may be considered, it is not dispositive of the standing issue. 421 Mass. at 724.[9] Marashlian did carty forth Barvenik’s basic holding regarding specific, as opposed to speculative evidence, holding that “. . . plaintiffs must put forth credible evidence to substantiate claims of injury to their legal rights.” Marashlian, 421 Mass. at 723. However, Marashlian has somewhat liberalized the requirements for standing in c. 40A appeals.
The rule this court derives from Marashlian is this: a plaintiff must show, though direct evidence rather than speculation, that he is likely to suffer harm to his legal or property interests as a result of a zoning decision. However, he need not show that this harm would be greater than any harm he suffers under current uses or would suffer under an as-of-right use. Although the magnitude of the threat of harm to a potential plaintiff in relation to the threat of harm from a use permissible as of right is a factor that may be considered, it is not dispositive of the standing issue.
3.Putting Forth Evidence Based on Personal Observation to Attain Standing: The Jaffe Case
Marashlian did not establish any specific standard for the type or amount of direct evidence a plaintiff must advance to attain standing. Nor did Barvenik address the quantum of evidence required. Although expert testimony in the form of an affidavit may not be necessary,[10] the plaintiffs supporting affidavit must assert relevant and admissible facts rather than speculation and inadmissible opinions. See Jaffe v. Zoning Board of Appeals of Newton, 34 Mass.App.Ct. 929, 930-31 (1993). The Jaffe Court found that a party seeking to oppose annulment of the zoning board’s decision that certain zoning violations existed on plaintiffs property and seeking to challenge the plaintiffs use of residential housing, demonstrated he was a “person aggrieved” by submitting an affidavit recounting his personal observations of raucous activity and increased foot traffic around the house in question which adversely affected his neighborhood and house. Finding that an increase in pedestrian traffic may impact a party’s interests so as to give him standing, the Court held that the party’s “statement of existing ‘facts’ based on ‘personal knowledge’ transports his affidavit beyond the realm of speculation.” Jaffe, 34 Mass.App.Ct. at 931.[11]
4.Rebuttal of the Presumption of Aggrievement
As stated above, a plaintiff who is a “party-in-interest” enjoys a presumption that he or she is “an aggrieved person.” Marotta v. Board of Appeals of Revere, 336 Mass. 199, 204 (1957). Although this presumption is rebuttable, the precise amount and nature of the evidence needed to rebut the presumption has not been established. The Court in Barvenik addressed this issue in a footnote,[12] indicating the different articulations of the standard to be employed in determining whether the presumption was rebutted. However a court may articulate the standard, the party seeking to rebut the presumption must come forward with sufficient evidence which would provide a trier of fact with a factual basis to find facts contrary to the presumed ones. See Liacos, Massachusetts Evidence 53-54 (5th ed. 1981) (“A presumption is rebutted by evidence warranting a finding contrary to the presumed fact”); Barvenik, 33 Mass.App. at 131, fn. 7. The one thing which the party seeking to rebut the presumption may not do is to offer the findings of the zoning board as sufficient evidence. Watros v. Greater Lynn Mental Health & Retardation Association, Inc. 421 Mass. 106, 111 (1995) (“The findings of the board, resulting in the decision that the plaintiffs are challenging, cannot be given evidentiary weight”).
5.Summary of Recent Cases: the Current State of the Law of Standing to Appeal Zoning Decisions
From these recent cases, this court distills the following principles: To have standing to challenge a decision of a zoning board of appeals under ch. 40A, §17, a plaintiff must show, through direct evidence rather than speculation, that he is likely to suffer harm to his legal or property interests as a result of a zoning decision. Marashlian, 421 Mass. at 724. However, he need not show that this harm would be greater than any harm he suffers under a current use or would suffer under a use as-of-right. Id. While a plaintiff must rely on more than speculation or personal opinion to establish his aggrieved status, Barvenik, 33 Mass.App.Ct. at 132, relevant facts which he has learned through his own personal observation may be sufficient. Jaffe, 34 Mass.App.Ct. at 930-31. Finally, a plaintiff who is a “pariy-in-interest” as defined by statute continues to enjoy a presumption of aggrieved status. Watros, 421 Mass. at 111. Such a plaintiff automatically has standing unless defendant presents evidence controverting the presumption. Id. Further, the findings of a zoning board of appeals do not constitute evidence. Id.
With these principles in mind, this court turns to the instant plaintiffs.
B. Application of the Legal Standard 1. The “Parties in Interest”: Plaintiffs Dietz and Peterson
This court will first address the two plaintiffs who are “parties in interest” as defined by statute. Plaintiff Dietz is conceded by both sides to be a party in interest, and thus is presumed to be a “person aggrieved.” Dietz, a resident of Chilmark on Martha’s Vineyard, MA, is a co-owner of commercial property at 26-28 Church Street. Tenants of the building include “The Globe Bookstore” and “Passim’s” restaurant and coffeehouse. Plaintiff Peterson is also a party in inter *319 est and enjoys the presumption that she is a person aggrieved. The defendants concede that Peterson, an abutter, enjoys the presumption of aggrieved person. Both Dietz and Peterson assert that Starbucks will create increased traffic congestion and double parking, which will in turn make Church Street less desirable and diminish the value of their property interests.
Watros establishes that to defeat the presumption and shift the burden back to Dietz, defendant must offer evidence, other than the findings of the zoning board, controverting the presumption. The defendants have done so. In its memorandum, Defendant states that the presumption is “directly challenged and controverted by the undisputed facts of this case.” It then cites the Affidavit of Alexander M. Cahaly, which is attached to Defendant’s Memorandum as Exhibit B. The Cahaly affidavit directly rebuts the presumption as it relates to Dietz. The Cahaly affidavit states and no other affidavit disputes that for fifteen years the property at issue has been leased to commercial tenants, Steve’s Ice Cream and Church Street Café, both of which were in the business of serving and selling food, .coffee, and nonalcoholic beverages. Dietz does not assert, nor do any of the plaintiffs, that there was traffic congestion and double parking associated with either of these commercial tenants. The clear implication of the Cahaly affidavit is that Starbucks, like its predecessor commercial food establishments, will not cause traffic congestion and double parking. Moreover, the Cahaly affidavit challenges the notion that Starbucks would adversely affect the value of these abutters’ property.
Once a defendant in a zoning appeal challenges the plaintiffs standing and offers evidence to support the challenge, the issue of standing is decided on the basis of the evidence with no benefit to the plaintiff from the presumption. Barvenik, 33 Mass.App.Ct. at 131.
The types of concerns Dietz and Peterson voice — increased traffic and decreased parking — are analogous to those presented in Marashlian, 421 Mass. 719. However there was some factual basis for the concerns the abutters raised in Marashlian. In this case, neither Dietz nor Peterson have presented facts in support of their fears. Rather both have merely speculated that Starbucks would generate increased traffic and decreased parking. Even the Marashlian majority noted that fears which are speculative or too remote would be insufficient to make the persons challenging the grant of a variance or the use of the property to be “aggrieved.” Id. 421 Mass. at 723.
While Marashlian establishes that a plaintiff no longer has to introduce large quantities of hard evidence to attain standing, court finds that Dietz and Peterson have failed to produce enough evidence of their harm to attain standing absent the presumption of aggrievement. Even under the more liberal federal law of standing,[13] “there must be a causal connection between the injuiy and the conduct complained of— the injury has to be fairly traceable to the challenged action.” Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136-37 (1992). Dietz and Peterson fail to connect their fears in any tangible way to Starbucks. For example Deitz, states in conclusory terms that Starbucks will cause her harm, but she does not support her arguments with facts. Dietz opines without a shred of evidence that “internationally publicized” businesses such as Starbucks are more likely to produce increased traffic and double parking. She also claims that Steve’s Ice Cream, a previous tenant, was less likely to produce litter than Starbucks since it sold primarily ice cream cones as opposed to coffee in paper containers. These types of “observations” are not enough to constitute direct evidence of aggrievement under Marashlian. Although Jaffe held that personal observations of relevant facts can be enough to allow standing, Dietz’s statements are not simply not specific enough and are too remote.[14] Dietz’s statement that ”[f]rom my experience, large chain fast food operations, with national advertising . . . (cause) congestion and double parking while the customers pick up their food” fails to point to the source of her observation.[15] Her observation, when applied to Starbucks, is no more than speculation.
Plaintiff Peterson, like Dietz, has failed to provide any personal observations about how Starbucks would cause harm. In her affidavit, Peterson concurs in an affidavit furnished by Gary Chafetz, for whom she has been substituted as a plaintiff. Chafetz contends Starbucks, as a national chain with extensive advertising, will attract illegal parking to the nearby street where he and Peterson live. Further, he asserts that Steve’s Ice Cream attracted mainly walk-in customers.
These assertions do little or nothing to establish that Starbucks will cause problems on Church Street. Like Dietz, Peterson would likely have attained standing had she advanced either expert testimony about Starbucks negative impact or even personal observations of problems at other Starbucks.[16] She has done neither, and thus lacks standing absent the statutory presumption of aggrievement.
2. The Non-Parties in Interest: Plaintiffs Gladys Gifford, Century Real Estate Co., Sage Building Realty Trust and Harvard Square Defense Fund A. Plaintiff Gladys Gifford
As a non-party in interest, Plaintiff Gladys Gifford enjoys no presumption of aggrievement. Thus, her evidence is compared against that put forth by the defendants. The evidence of the parties is evaluated by the basic Marashlian standard; that is, Gifford is required to provide direct evidence, rather than speculation, that she will be harmed by the presence of Starbucks at 31 Church Street.
Gifford, like other plaintiffs, says that based on her own personal observations, Church Street is a narrow, *320 busy thoroughfare that suffers from traffic congestion and double parking. Like other plaintiffs, she claims that Starbucks will exacerbate these problems. In marked contrast to other plaintiffs, however, Gifford presents personal observations that attempt to link her assertions to Starbucks. In her affidavit, Gifford states:
I have observed that a Starbucks coffee shop on the corner of Massachusetts Avenue and Shepard Street, about V2 mile from the proposed Church Street location, causes traffic congestion, through double-parking (sic), and litter.
Additionally, in her statement to the zoning board, Gifford asserts that she has picked up litter from a neighborhood shop known as Coffee Connection— which she says is owned by Starbucks and was being converted to a Starbucks. Gifford’s statements on this score went unrefuted at the hearing.
However, Gifford’s conclusion that parking and traffic problems at another Starbucks means that such problems will happen if Starbucks opens a business on Church Street, is, without more, speculation. The holding in Jaffe does not help Gifford because the party seeking standing in Jaffe observed the activities he feared taking place on and around the property in question. See Jaffe, 34 Mass.App.Ct. at 930-31. There was no speculation. In contrast, Gifford can only surmise that the problems she fears may happen. She does not offer any competent evidence, other than the mere existence of another Starbucks, for the notion that the traffic and parking problems allegedly occurring around another Starbucks in a different neighborhood, with different traffic patterns and parking problems, will repeat on Church Street. Gifford has provided neither expert opinion nor documentary evidence of her claims. Thus, Gifford fails to attain standing under Marashlian.
B. Plaintiffs Centuiy Real Estate Co., Sage Building Realty Trust and Harvard Square Defense Fund
None of these plaintiffs is a party in interest. None of these plaintiffs have provided more than mere speculation about how Starbucks’ presence on Church Street will harm them. Affiants for these plaintiffs cite traffic, parking and litter problems on Church Street, and state that Starbucks will exacerbate these problems. However, they offer no direct evidence regarding how Starbucks will in fact worsen conditions on the street. They offer no documentary evidence or expert opinion. Thus, they fail to attain standing under Marashlian.
ORDER
It is therefore ORDERED that defendants’ motion for summary judgment be ALLOWED as to plaintiffs Harvard Square Defense Fund, Inc.; Centuiy Real Estate Co., Inc.; Sage Building Realty Trust and Charles Sage, Trustee; Annabel Dietz; Deanne Peterson; and Gladys Gifford. Because these plaintiffs lack standing this Court doe not have jurisdiction over this matter. Summary Judgment of dismissal shall enter for the defendants.

 Ehose who spoke in opposition included Charles Sage, a trustee of the Sage Building, which is diagonally opposite the property; Gladys (Pebble) Gifford, president of the Harvard Square Defense Fund; John Moot, who also spoke on behalf of the Harvard Square Defense Fund; George Sarkis, owner of C’est Bon in Harvard Square; and resident Edward Mank. They voiced concerns about increased traffic, diminished parking, double parking in front of the proposed Starbucks, increased litter, and the already high number of business serving take-out coffee in the Church Street'area.

 Additionally, Cambridge Mayor Sheila Russell and City Councillor Michael A. Sullivan filed letters with the board supporting the proposed special permit. Alexander (Sandy) Cahaly, owner of 31 Church Street, spoke in favor of granting the permit. Cahaly is an affiant in this matter.

 Eollowing discussion, the Board’s Chairperson, John Miller, moved to grant the permit with several conditions: that Starbucks place trash receptacles at the exit of the store; that Starbucks put in sidewalk trash receptacles, if allowed by the City; that the store have restrooms open to the public; that servers are to ask customers if they are going to have their coffee inside the premises, and that customers who choose to do so be served in reusable containers; that the company attempt to use recyclable materials whenever possible; that baked goods sold at the store not be cooked or assembled on the premises; and that the great majority of the deliveries to the store are to be made early in the morning, before the opening of the store.
Also, on February 7, 1996, after conducting hearings on Starbucks application, the Cambridge Historical Commission granted a Certificate of Appropriateness to Starbucks, finding that the work to be conducted on the site is not incongruous with the historic architectural character of the building or district.

 Plaintiff Annabel Dietz owns 26-28 Church Street, which is directly across from the proposed Starbucks. Dietz was listed on the certified list as a property owner entitled to notice of the hearing. Plaintiff Century owns a building at the comer of Massachusetts Avenue and Church Street. Century’s tenant "C’est Bon," located at 1432 Massachusetts Avenue, operates a fast food business serving coffee and some food items. Plaintiff Sage is located at the corner of Brattle Street and Church Street. That property contains “Sage’s” grocery store. Plaintiff Peterson is record owner of 24 Farwell Place, Unit #3, and appeared on the certified list as a property owner entitled to notice of the hearing. Plaintiff Gifford owns and resides at properly located at 15 Hilliard Street. Plaintiff Harvard Square Defense Fund Inc. is a non-profit organization with about 500 members who live and work in Harvard Square and adjoining neighborhoods.

 Elaborating on this principle, the Court stated that:
*321 Subjective and unspecific fears about the possible impairment of aesthetics or neighborhood appearance, incompatible architectural styles, the diminishment of close neighborhood feeling, or the loss of open or natural space are all considered insufficient bases for aggrievement under Massachusetts law.
Id. at 133.

 The Appeals Court followed this change in the law in Chambers v. Building Inspector of Peabody, 40 Mass.App.Ct. 762, 768 (1996), where it held a plaintiff, to have standing, did not have to show that modifications to a site plan would harm her more than a plan already approved by a city council.

 Barvenik strongly implies that expert testimony corroborating a plaintiffs fears is an important element of standing. 33 Mass.App.Ct. at 136. However, neither Barvenik nor Marashlian holds that expert testimony is a prerequisite of standing. The plaintiff in Marashlian, where standing was proper, did rely on an expert’s report, but it appears from the Appeals Court’s Marashlian decision that only “one sentence” of this report was used to support the plaintiffs standing. 37 Mass.App.Ct. at 932. The report was not mentioned in the SJC’s opinion.

 However, the Jaffe court pointed out that the party’s lay opinion that he felt that "our property values are affected adversely” probably would not be sufficient without an opinion from a real estate expert. Id. 34 Mass.App.Ct. at 931.

 Barvenik, 33 Mass.App. at 131, fh. 7.

 These federal principles are discussed in Barvenik, 33 Mass.App. at 132, fn. 9.

 In Jaffe, the party whose standing was challenged observed, and reported, increased foot traffic and noise that was directly traceable to a zoning board’s action. Here, by contrast, Dietz has failed to either point to a specific harm or to connect that harm to Starbucks.

 This court recognizes that it is difficult for a plaintiff to provide specific evidence, based on personal observation or otherwise, about a use that been approved but does not yet exist in the neighborhood. However, as discussed below, another plaintiff in this action — Gladys Gifford — made specific personal observations of another Starbucks establishment to support her assertions. Dietz has not done even that much. Further, Dietz has advanced no expert testimony about how Starbucks would cause her harm. Either step would likely be sufficient to produce standing under the more lenient Marashlian standard.

 However, observations of traffic and/or parking problems around other Starbucks without more would not be sufficient. Unless there is detailed evidence of a strong similarity between the locale of the observed Starbucks and the Harvard Square area, any claim of similar traffic and/or parking problems would be mere speculation.

 “Parties in interest” are (1) abutters, (2) owners of land directly opposite the locus on any street, and (3) abutters of abutters within 300 feet of the property line. G.L.c. 40A, §11. “Parties in interest” are entitled to notice of a zoning board’s hearings.