Spurlock, Charles T., J.
INTRODUCTION
This matter arises from the Planning Board of the Town of Nantucket’s (“the Planning Board”) grant of a special permit for a cluster development in Nantucket, MA (“the Town”). The plaintiffs appealed under G.L.c. 40A, 17, alleging that the Board’s decision did not comply with the Town’s zoning bylaws. Pursuant to Mass.R.Civ.P. 56, the defendants move for summary judgment. The defendants argue that they are entitled to summary judgment because (1) the plaintiffs lack standing to complain about potential water contamination in Miacomet Pond; (2) the cluster development meets the requirements under the Town’s zoning bylaws; and (3) approval of the septic systems to be installed in the cluster development are not within the jurisdiction of the Planning Board. In opposition, and on cross motion, the plaintiffs argue that the special permit was erroneously granted. The plaintiffs contend that the (1) the Board’s decision does not comply with the Town’s zoning bylaws; (2) the septic system of the cluster development endangers the plaintiffs’ wells; and (3) no adequate traffic study has been submitted. For the foregoing reasons, the defendants’ motion for summary judgment is DENIED in part and ALLOWED in part. The plaintiffs’ motion for summary judgment is DENIED.
FACTS
The undisputed facts are as follows. Additional undisputed facts will be discussed when considering the parties’ legal contentions. Bluefin Partners LLC (“Bluefin”) applied for a special permit proposing a nineteen (19) buildable lot cluster subdivision (“cluster development”) on a 28.83-acre tract of land. Before granting Bluefin’s application, the Planning Board reviewed documents over a period of approximately 8-9 months. The Board held meetings on July 24, 2006; September 25, 2006; December 11, 2006; January 8, 2007; February 12, 2007; and March 12,2007. The Board rendered its decision on March 12, 2007 in an eight-page memorandum. In addition to the application, the documents considered and reviewed by the Board included two site analyses, drainage calculations, and development plans. At each hearing, the plaintiffs were present and were represented by counsel. Through counsel, the plaintiffs made multiple oral and written submissions to the Board. The plaintiffs also submitted evidence to the board through profes *269 sional engineers. The Board was fully aware at the time of its decision that a sand and gravel mining operation was ongoing at the site of the cluster development. The Board granted the special permit pursuant to Nantucket Zoning Bylaw, 139-7(B).
DISCUSSION
The parties spend much time debating the 40A standard of review, specifically the degree to which the review conducted is de novo and the weight that is to be given to the Board’s decision below. The current motions before this court are for summary judgment, and “fact finding has no place on a motion for summary judgment.” Boston Seaman’s Friend Society, Inc. v. Rifkin Management, Inc., 19 Mass.App.Ct. 248, 249, review denied, 394 Mass. 1101 (1985). The question before the court on a summary judgment motion is whether the moving party, viewing at the evidence in a light most favorable to the non-moving party, is entitled to a judgment as a matter of law on the particular issue presented.
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of triable issues. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of triable issues by either submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party would have no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
I. Standing with respect to Miacomet Pond
To have standing, each plaintiff must be a “person aggrieved.” A plaintiff is a “person aggrieved” if he or she suffers a “definite violation of a private right, a private property interest, or a private legal interest.” Harvard Square Defense Fund, Inc. v. Planning Bd. of Cambridge, 11 Mass.App.Ct. 491, 493, rev. denied, 405 Mass. 1204 (1989). See Circle Lounge & Grille, Inc. v. Bd. of Appeal of Boston, 324 Mass. 427, 430 (1949); Riley v. Janeo Cent., Inc., 38 Mass.App.Ct. 984, 985 (1995) (requiring a “plausible claim of particularized injuiy”). The majority of the plaintiffs are abutters, who enjoy a presumption of standing. Watros v. Greater Lynn Mental Health and Retardation Assoc., 421 Mass. 106, 111 (1995).
The defendants argue that the plaintiffs lack standing to complain about potential water contamination in Miacomet Pond because it is public land and any contamination is not an infringement of a public right. Standing with respect solely to Miacomet pond is a moot issue. The mere fact that the plaintiffs may not have standing based on the potential contamination of Miacomet Pond is irrelevant because they have standing as abutters to the cluster development, which enables them to challenge the Board’s decision. Watros, 421 Mass. at 111.
II. The requirements under Nantucket Zoning Bylaw, 139-7(B) 1. 139-7(B)(2)
The purpose of a cluster development is twofold; it must promote “the more efficient use of land in harmony with its natural features . . . and maintain the delicate ecological balance that exists ...” Nantucket Zoning Bylaw 139-7(B)(1). The Board may grant a special permit to build a cluster development if the following criteria are met: (a) the proposed development is in- harmony with the purpose and intent of 139; (b) it meets standards for public health, safely, convenience and welfare as set forth in the Planning Board’s Rules and Regulations Governing the Subdivision of Land and the Nantucket Board of Health Regulations (60.00) Governing Minimum Lot Size for Unsewered Lots; and (c) it will better protect the ecological integrity and aesthetic quality of the area in which it is proposed than would a conventional subdivision. Nantucket Zoning Bylaw, 139-7(B)(2).
The Board found that the proposed cluster development met all the requirements under Nantucket Zoning Bylaw, 139-7(B)(2). In its decision, the Board found that the cluster development “is in harmony with the purpose and intent of the Zoning bylaw,” and “will not have an adverse impact on the surrounding area.” The Board found that it “will enhance the public good, health, and safety by providing an emergency access trail.” The Board also found that the cluster development “generally meets the standards for public health, safely, convenience, and welfare as stated in the [Board’s] Rules and Regulations Governing the Subdivision of Land,” and “will meet the Nantucket Board of Health Regulations (60.00) Governing Minimum Lot Size for Un-sewered Lots.” Additionally, the Board found that the cluster development “will better protect the ecological integrity and aesthetic quality of the area than would a conventional subdivision by (i) concentrating the development to roughly one-quarter of the site, (ii) increasing setbacks of proposed structures from neighboring structures, (iii) restoring disturbed land to a more natural state, (iv) enhancing the utility of an existing parcel of open space owned by the Land Bank, and (v) allowing public access to said open space.”
These findings comply with the requirements of Nantucket Zoning Bylaw, 139-7(B)(2). Furthermore, it is undisputed that these findings were supported at public hearings, upon review of the building plans, review of the evidence submitted by the plaintiffs, drainage calculations, and other documents necessary to make a thorough decision based on substantial evidence. The Board granted the special permit with the bylaws requirements in mind, and issued a written memorandum supporting its decision. There is no *270 evidence in the summary judgment record that the decision was arbitrary or capricious, or that the Board abused its discretion, or that the Board failed to comply with the bylaw. As a matter of law, the Board’s decision meets all the requirements of Nantucket Zoning Bylaw, 139-7(B)(2).
2. 139-7(B)(3)
i.“Open land” requirement
Although the special permit satisfies the requirements of 139-7(B)(2), the decision of the Board will be untenable as a matter of law if the cluster development does not consist of 75% “open land.” Nantucket Zoning Bylaw, 139-7(B)(3). “Open land” is defined as “[a] parcel of land... set aside in an undeveloped state.” Nantucket Zoning Bylaw, 139-2. Bluefin has designated 22.4 acres of the site as “open land.” The buildings will be constructed on one-quarter of the site. The plaintiffs argue that the cluster development does not satisfy 139-7(B) (3) because that area of the site designated as “open land” does not fit the definition of “open land.”
Currently, the subject area of land is partially a sand and gravel pit. Bluefin has submitted plans to restore that portion of the site “to a more natural state.” This will include vegetative restoration and rehabilitation. This portion of the site will not have any buildings on it. This clearly meets the plain meaning of “undeveloped,” regardless of its current state. This also meets the definition of “open space” because it will not be developed, and therefore, will be in an “undeveloped state.” The special permit satisfies 139-7(B)(3) as a matter of law.[3]
ii.Lot numbers and density bonuses
The plaintiffs argue that the starting point of analysis under the zoning bylaws is to determine on how many lots Bluefin is entitled to build. This is plainly in error. The starting point is to determine if a cluster development satisfies Nantucket Zoning Bylaw, 139-7(B)(2), which it does. In addition to approving or denying a special permit, it is also within the Board’s authority to see that Bluefin complies with the special permit, which includes intensity regulations that determine lot size, property setbacks, and ground cover ratios throughout the construction process. Nantucket Zoning Bylaw, 139-7(B)(3) and 139-16.
Page 7 of the Board’s decision and memorandum, omitted from Exhibit A attached to the plaintiffs’ complaint, conditions the special permit’s approval upon compliance with lot sizing, lot numbers, and intensify regulations. Furthermore, the intensify regulations also allow for density bonuses of up to 30% if Bluefin meets special criteria. Nantucket Zoning Bylaw, 139-7(B)(4). The Board’s decision accounts for these criteria in its memorandum and also requires a pre-construction meeting before Bluefin begins development. If Bluefin does not comply with the intensity regulations, the Board can revoke the special permit. The Board’s decision complies with the bylaw because Bluefin may only build as many lots as the bylaw allows.
iii.One dwelling per lot ratio
Under Nantucket Zoning Bylaw, 139-7(B)(3) and (4)(c), Bluefin is limited to building only one dwelling on every lot. The Board’s decision allows Bluefin to build a dwelling and a studio on nine (9) lots. The plaintiffs argue that this violates the one dwelling per lot rule. The bylaws, however, clearly indicate that a “studio” is not a “dwelling.” A dwelling is defined- as “[a] building used, or to be used, for habitation, containing sanitation facilities.” Nantucket Zoning Bylaw, 139-2. A studio is defined as “[a] building or a room or rooms where an artist, artisan, photographer or the like does his or her work.” Id. Because the bylaws only place limits on the number of dwellings on a lot, the allowance of studios on a handful of lots, rooms where artists work, does not violate Nantucket Zoning Bylaw, 139-7(B)(3) and (4)(c). The Board’s decision clearly limits each lot to one dwelling. The plaintiffs’ argument fails as a matter of law.
III. Septic systems
The plaintiffs allege that Bluefin cannot install septic systems that would conform to the Town’s zoning by-laws. They further argue that due to this alleged impossibility, the Board erroneously granted the special permit. The defendants argue that this contention is premature because consideration of on-site septic system feasibility is not within the consideration of the Board. Rather, the defendants suggest that this power is vested in the Nantucket Board of Health and that they do not have to get septic system approval to grant or obtain a special permit. This argument is persuasive.
“The approval of any [septic] system, including the issuance of Disposal System Construction Permits, Local Upgrade Approvals, and Certificates of Compliance, shall be by the local Approving Authority,” in this instance, the Nantucket Board of Health. 310 Code Mass. Regs. 15.003(2), 15.002. 15.003(2), read in light of 15.002, vests the power of septic system approval in the Nantucket Board of Health, not the Planning Board. Since the Planning Board does not have the authority to approve or deny a septic system, it makes sense that the Board should not take into consideration septic systems in the approval or denial of a special permit. To argue that the Board’s decision to grant a special permit was erroneous because it failed to consider, improperly considered or did consider, but did so in error, a matter it had no discretion to consider is without merit. This argument is not ripe for determination and must be pursued if and when the Nantucket Board of Health renders its decision regarding the feasibility of the on-site septic systems for the cluster development.[4]
IV. An adequate traffic study
Another argument the plaintiffs advance on their cross motion for summary judgment is that the Board’s decision is invalid because Bluefin did not submit a traffic study that complied with all the *271 minimum requirements under the Nantucket Planning Board’s Rules and Regulations Governing the Subdivision of Land 2.06a(12). A traffic study is not a requirement for a special permit. Rather, the Board may require the submission of a traffic study if it so chooses. Nantucket Planning Board’s Rules and Regulations Governing the Subdivision of Land 2.06a(12). The Board requested a traffic study and Bluefin complied with that request. Section 2.06a(12) does not indicate that a special permit fails for failure to submit a traffic study that complies with the minimum requirements under 2.06a(12).
ORDER
Viewing the evidence in a light most favorable to the plaintiffs, the Board’s decision is valid. Therefore, it is ORDERED that the defendants’ motion for summary judgment is DENIED with respect to the standing issue and' ALLOWED in all other respects. The plaintiffs’ cross motion for summary judgment is DENIED. The Board’s decision is AFFIRMED.

 The plaintiffs argue that Bluefin will not actually restore the site. In its decision, the Board has conditioned the granting of the special permit upon Bluefin’s compliance with the project plans and the Board’s findings. If Bluefin does not fulfill this obligation, the special permit will be revoked.

 This rationale also applies to and defeats the plaintiffs’ argument that any prospective on-site septic system will endanger the plaintiffs’ wells.