JOSEPH M. PETRUCCI vs. BOARD OF APPEALS OF WESTWOOD.

No. 97-P-1057.

Suffolk. May 27, 1998. - November 30, 1998.

Present: BROWN, GREENBERG, & LAURENCE, JJ.

*Child Care Facility. Zoning,* Child care facility, Accessory building or use, Nonconforming use or structure, Issuance of permit. *Statute,* Construction.

A proposed child care facility was properly located in a single residence zoning district under the child care facility exemption set forth in G. L. c. 40A, § 3, third par. [819-823]

Proposed renovation of a barn, a nonconforming structure, to transform it into a child care facility, a use permitted in the zoning district under G. L. c. 40A, § 3, third par., did not require compliance with zoning setback requirements, where enforcement of dimensional controls would be unreasonable in the circumstances. [824-827]

On the record of proceedings in the Land Court, the judge properly exercised his discretion under G. L. c. 40A, § 17, to order a board of appeals to issue a building permit for renovations to a structure to transform it into a child care facility under the exemption from zoning restrictions set forth in G. L. c. 40A, § 3, third par. [827-828]

CIVIL ACTION commenced in the Land Court Department on July 10, 1995.

The case was heard by *Leon J. Lombardi,* J., on a motion for summary judgment, and, following remand to the board of appeals of Westwood, the case was heard by him.

*Thomas P. McCusker, Jr.,* for the defendant.

*Mark Bobrowski* for the plaintiff.

LAURENCE, J. Joseph Petrucci and six family members reside in his home on a 53,000 square foot lot in Westwood's "single residence" zoning district. In 1995, he proposed to establish a child care facility in a barn located on his property. After interior renovations to the barn that would leave its exterior and footprint unchanged, the facility would serve forty-seven children daily and be staffed by six adults. The Westwood build-

ing commissioner (commissioner) denied Petrucci's application for a building permit to begin the renovations. The denial was affirmed by the Westwood board of appeals (board), which agreed with the commissioner that Petrucci was not entitled to the "child care facility exemption" he was relying on under G. L. c. 40A, § 3, third par., because the proposed use was not properly either "primary, accessory or incidental."[1] Following Petrucci's appeal pursuant to G. L. c. 40A, § 17, a Land Court judge agreed with Petrucci that the claimed exemption for a child care facility under § 3 applied and granted him partial summary judgment allowing the desired use.

The judge remanded the matter to the commissioner for review of Petrucci's application on the issue of the applicability of the "reasonable regulations" that the statute permits municipalities to impose on such a facility (see note 1, *supra*). The commissioner thereafter rejected the application because the barn failed to comply with the zoning by-law's rear yard, side yard, and height requirements. The board again affirmed the commissioner. After trial on the issue of the reasonableness of applying those regulations to the proposed project, the Land Court judge again upheld Petrucci, ruling that the imposition of the town's dimensional restrictions was unreasonable and ordering the board to issue the requested building permit. On the board's appeal, we affirm.

1. *Applicability of the § 3 exemption.* The commissioner initially denied Petrucci's application on his view that the proposed use "would result in the establishment of two princip[al] uses" on the property and was "not clearly accessory or incidental to a residential use." The board concurred,

[1]General Laws c. 40A, § 3, third par., inserted by St. 1990, c. 521, § 2, provides:

> "No zoning ordinance or bylaw in any city or town shall prohibit, or require a special permit for, the use of land or structures, or the expansion of existing structures, for the *primary, accessory or incidental* purpose of operating a child care facility; provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements. As used in this paragraph, the term 'child care facility' shall mean a day care center or a school age child care program, as those terms are defined in section nine of chapter twenty-eight A." (Emphasis added.)

because the proposed facility "was so intensive" as to constitute a primary use of the property, and it could find "no authority" for "two . . . primary uses [to] . . . be situated on one property." The board further determined that the facility was not sufficiently "subordinate and related to the primary [residential] use of the property . . . [to] be construed [as] . . . accessory or incidental." The judge concluded that the board's reasoning was legally erroneous. He observed that nothing in the zoning by-law prohibited either child care facilities or the existence of more than one primary or principal use on a lot. He noted that the by-law even appeared to contemplate the possibility of multiple primary uses.[2]

The judge's chief basis for endorsing Petrucci's reliance on the § 3 exemption, however, was his rejection of the board's restrictive construction of the statute. The board focused (both below and here) on the words "primary, accessory or incidental" in the third paragraph of § 3. It contended that the difference between those terms and the language of the immediately preceding (second) paragraph of § 3, providing a zoning exemption for educational or religious uses,[3] betokened a much narrower exemption intended by the Legislature for child care facilities.

The board's argument runs thus: Whereas the exemption of the second paragraph of § 3 speaks broadly and generally of "use for religious . . . or for educational purposes," the third paragraph requires that the child care facility "use" be either "primary, accessory or incidental." Each of those words must be read literally so as to give them their customary meaning.

[2]The judge quoted § 5 of the by-law, which states, in pertinent part: "No building or structure shall be constructed, and no building, structure or land shall be used, in whole or in part, for any purpose other than for *one or more* of the uses hereinafter set forth as permitted in the district in which said building, structure or land is located, or set forth as permissible by special permit in said district . . ." (emphasis added).

[3]General Laws c. 40A, § 3, second par., sets forth the so-called "Dover Amendment," inserted by St. 1950, c. 325, and reinserted by St. 1975, c. 808, § 3, which provides, in pertinent part, that no zoning bylaw shall "prohibit, regulate or restrict the use of land or structures for religious purposes or for educational purposes on land owned or leased by the commonwealth or . . . by a religious sect or denomination, or by a nonprofit educational corporation; provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements."

Since the principal use of the Petrucci property is already residential, the child care facility cannot be a "primary" use, because "[i]t is . . . clear that you cannot have two primary uses [of the property] either under the by-law or by definition."[4] Nor can the facility pass muster as an "accessory" or "incidental" use under the zoning decisions construing those terms, which hold that such a use not only must be minor in significance to the primary use but also must have a normal or customary subordinate relationship to that use. Compare *Harvard* v. *Maxant*, 360 Mass. 432, 438 (1971); *Henry* v. *Board of Appeals of Dunstable*, 418 Mass. 841, 844-846 (1994); *Gallagher* v. *Board of Appeals of Acton*, 44 Mass. App. Ct. 906, 907 (1997); *Maselbas* v. *Zoning Bd. of Appeals of N. Attleborough*, ante 54, 56-57 (1998). Given the size of the facility (six adults and forty-seven children) in relation to the several Petrucci family members already there engaged in "typical family" residential living, it will be so comparatively large, intensive, and separate an operation as to be neither accessory nor incidental.[5]

Assuming, without deciding, that the proposed child care facility cannot be deemed "accessory" or "incidental" to a residential use, we nonetheless conclude that the board was wrong and the judge correct in determining that the facility qualified for the exemption of the third paragraph of G. L. c. 40A, § 3. We need look no further than the language of the statute, which states that a zoning by-law may not "prohibit, or

[4]The board cites no statutory or decisional authority for this proposition. As indicated in note 2, *supra*, it was not at all "clear . . . under the by-law."

[5]There are no Massachusetts cases explicating the status or character for zoning purposes of a child care facility located on residential property. *Woodvale Condominium Trust* v. *Scheff*, 27 Mass. App. Ct. 530, 533-535 (1989), dealing with the question whether a family day care business was permissible in a unit of a condominium, the master deed of which stated that the unit could be used "solely for residential dwelling purposes," is as close as we can find. There, the court concluded that the many distinctions between normal, residential use and a busy day care operation made the latter so different from the former that it could not be deemed a usual incident of residential living. Cases in other jurisdictions appear divergent. Compare *Schofield* v. *Zoning Bd. of Adjustment of Dennis*, 169 N.J. Super. 150, 154-155 (1979) (home day care of twelve to eighteen children is not incidental to residential use), and *Metzner* v. *Wojdyla*, 125 Wash. 2d 445, 452 (1994) (even small-scale child care incompatible with covenant restricting use of the property to residential purposes), with *People* v. *Bacon*, 133 Misc. 2d 771, 776-778 (N. Y. Dist. Ct. 1986) (home day care of children is a permissible accessory use in a residentially zoned district).

require a special permit for, the use of . . . structures, or the expansion of existing structures, for the primary . . . purpose of operating a child care facility." Petrucci's proposal falls squarely within that injunction. His existing structure, the barn, will be used (whether or not expanded) for the primary, indeed the sole, purpose of housing a child care facility operation; it cannot, therefore, be prohibited or subject to special permit requirements.[6]

Even were the board correct in its assertion that the Westwood by-law does not permit multiple primary uses on a single lot, such a prohibition is exactly what the statute declares impermissible with respect to child care facilities. The board's reiterated assertions that the exemption applies only where the child care facility can be characterized as the sole primary use "of the property" overlook the second half of the disjunctive statutory phrase, "use of land or structures." The board thereby runs afoul of *Watros* v. *Greater Lynn Mental Health & Retardation Assn., Inc.*, 421 Mass. 106 (1995), dealing with the educational purpose exemption of the second paragraph of § 3.

In dismissing the argument of abutters who challenged the proposed use on residential property of a barn to house and educate retarded adults — that the exemption applied only when the educational use occupied the entire property — the court in *Watros* stressed that the second paragraph "speaks not once, but twice, of 'land or structures' as the focus of the exemption." 421 Mass. at 113. The "constrictive result" flowing from the abutters' reading of the statute was "neither required by the language of the statute nor consistent with its purpose," *id.* at 114, which was "to prevent local interference with the use of real property" — whether of land or of structures thereon — for the exempt purposes identified in the statute. *Id.* at 113. Here, also, the plain language of the statute (which, as in *Watros*, speaks not once but twice of "land or structures") and its manifest intent — to broaden, rather than narrow, the opportunities for establishing child care facilities in the Commonwealth[7] — overwhelm the board's constrictive effort to parse any

---

[6]The judge did not rely on the plain language of the statute in rendering judgment for Petrucci, but his correct decision may be sustained on appeal on any sound basis. See *Hickey* v. *Commissioner of Pub. Welfare*, 38 Mass. App. Ct. 259, 263 (1995).

[7]Aside from the very fact that it creates an exemption from local zoning restrictions, G. L. c. 40A, § 3, third par., defines "child care facility" as a

substantial child care facility on a residential property out of the statute.[8]

"day care center" as that term is used in G. L. c. 28A. Chapter 28A, § 1(4), inserted by St. 1972, c. 785, § 1, states that it is the policy and purpose of the Commonwealth to "promote the development of day care services in order to provide that such services shall be available in every community for all families which express a need for them." Although clear statutory language ordinarily obviates the need to resort to rules of interpretation, *Bronstein* v. *Prudential Ins. Co. of America,* 390 Mass. 701, 704-705 (1984), both related statutes, see *Plymouth County Retirement Assn.* v. *Commissioner of Pub. Employee Retirement,* 410 Mass. 307, 309-312 (1991); *Civitarese* v. *Middleborough,* 412 Mass. 695, 700-702 (1992), and legislative history, see *Commonwealth* v. *Gove,* 366 Mass. 351, 354-355 & n.4 (1974), may be referenced by way of supplementary confirmation of the intent reflected in the words used.

[8]The board cites *Watros* as supportive of its position, because of the court's incidental observation there, 421 Mass. at 113, that the educational use exemption of G. L. c. 40A, § 3, second par., does not distinguish between "principal" and "accessory" uses, while the third paragraph of § 3 explicitly does. The board's invocation of *Watros* fails precisely because it rests on the assumption, rejected by *Watros,* that an entire parcel of "land" must be used to benefit from the exemption and ignores the presence of the word "structure" in the statute. The board cites no other relevant authority for its statutory construction argument, but presumably relies on two standard canons. First, the use of different language in related statutes dealing with the same subject matter ordinarily indicates that different meanings were intended. See 2B Singer, Sutherland Statutory Construction § 51.02 (5th ed. 1992). Cf. *Beeler* v. *Downey,* 387 Mass. 609, 616 (1982). However, like all such canons, this one does not apply when (as here) the statutory language is so clear as to make extrinsic aids unnecessary, especially an aid whose application would be contrary to the Legislature's undoubted purpose. See *Brady* v. *Brady,* 380 Mass. 480, 483-484 (1980); *Commonwealth* v. *Fall River Motor Sales, Inc.,* 409 Mass. 302, 315-316 (1991). Second, "[w]henever possible, we give meaning to each word in the legislation; no word in a statute should be considered superfluous." *International Org. of Masters, Mates & Pilots, Atl. & Gulf Maritime Region, AFL-CIO* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.,* 392 Mass. 811, 813 (1984). Again, even if applicable, this is not an ineluctable doctrine, see *Bartlett* v. *Greyhound Real Estate Fin. Co.,* 41 Mass. App. Ct. 282, 289 (1996), and in any event must yield to the even more fundamental precept, expressly relied on by the Land Court judge, that "a strictly literal reading of a statute should not be adopted if the result will be to thwart or hamper the accomplishment of the statute's obvious purpose, and if another construction which would avoid this undesirable result is possible." *Watros,* 421 Mass. at 113. In light of our holding above, we do not have to depend upon the judge's rationale — that by use of the words "primary, accessory or incidental" in the statute "the legislature intended to cover all bases . . . and to leave no type of [child care facility] use beyond the reach" of the exemption — although we find the judge's construction of

2. *Reasonableness of regulations.* As in *Campbell* v. *City Council of Lynn*, 415 Mass. 772, 777 & n.6 (1993), we are concerned with a prior nonconforming structure. Despite the *Campbell* precedent, however, there was no inquiry as to whether alterations necessary to transform the barn into a child care facility would take it outside the protection granted by G. L. c. 40A, § 6, to prior nonconforming structures. Pursuant to G. L. c. 40A, § 3, there could be no denial of the right to use the barn as a child care facility. Accordingly, analysis pursuant to § 6 would not turn on any impact of the *use* of the barn as a child care facility but on whether the barn *structure*, as altered, would be substantially more detrimental to the neighborhood than the existing nonconforming structure.

This case was decided in the Land Court solely on the basis of G. L. c. 40A, § 3, third par.; and, while it appears unlikely that the proposed renovations of the barn would fail the § 6 test, the record does not invite resolution under § 6. In any event, we conclude that Petrucci is entitled to relief based on § 3 and that there is no reason to require proceedings under § 6. See *Campbell* v. *City Council of Lynn*, 415 Mass. at 777-778 n.6.

The judge ruled that Petrucci had successfully demonstrated the unreasonableness of the dimensional requirements that the commissioner and the board imposed upon the barn. The relevant sections of the by-law require a side yard width of twenty feet and a rear yard depth of thirty feet, with a maximum building height of twenty-five feet. The barn is over thirty-four feet high and is located only twelve feet from both the side and rear lot lines. Compliance with the zoning requirements is possible only if the barn is physically relocated on the lot.[9]

The parties agree that the controlling authority on the reason-

this remedial statute persuasive. See *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996); *Wonderland Greyhound Park, Inc.* v. *State Racing Commn.*, *ante* 226, 233 (1998). We note, in this connection, that the board has failed to identify any use or purpose that might be but was not included or encompassed within the words "principal, accessory or incidental."

[9]The commissioner and the board determined that, short of relocation, Petrucci would have to obtain a variance, after site plan review. On Petrucci's second motion for partial summary judgment, the judge ruled that the proposed exempt use could not be made subject to either variance procedures or site plan review, a conclusion in accord with *Trustees of Tufts College* v. *Medford*, 415 Mass. 753, 760, 765 (1993). The board has not questioned that ruling in this appeal.

ableness of the application of zoning regulations to exempt uses under G. L. c. 40A, § 3, is *Trustees of Tufts College* v. *Medford*, 415 Mass. 753 (1993),[10] which announced an ad hoc, fact-specific approach to resolving disputes in most § 3 situations:

> "[T]he question of the reasonableness of a local zoning requirement, as applied to a proposed . . . [exempt] use, will depend on the particular facts of each case. Because local zoning laws are intended to be uniformly applied, an [applicant] . . . making challenges similar to those made by Tufts will bear the burden of proving that the local requirements are unreasonable as applied to its proposed project. The . . . [applicant] might do so by demonstrating that compliance would substantially diminish or detract from the usefulness of a proposed structure, or impair the character of the . . . [applicant's property], without appreciably advancing the municipality's legitimate concerns. Excessive cost of compliance with a requirement imposed [by the zoning ordinance] . . . , without significant gain in terms of municipal concerns, might also qualify as unreasonable regulation of an . . . [exempt] use." (Footnote omitted.)

415 Mass. at 759-760. The judge's conclusion, that enforcing Westwood's dimensional controls in Petrucci's circumstances would be unreasonable, represented a proper application of the factors set forth in *Tufts College*.

Based upon the trial testimony of Petrucci's expert witnesses on zoning issues and historic buildings and of Petrucci himself (who had been in the construction business for thirty-five

---

[10]In his first partial summary judgment decision, the judge ruled that the *Tufts College* analysis, though arising in an educational use context, was applicable to child care facilities (another ruling unchallenged here). The basic rationale of *Tufts College* has been applied to another provision of G. L. c. 40A, § 3. See *Prime* v. *Zoning Bd. of Appeals of Norwell*, 42 Mass. App. Ct. 796, 802 (1997) (involving the agricultural use exemption of the first paragraph). Given the identity of the language of the "reasonable regulations" provisions in the second and third paragraphs of § 3, the teaching of *Tufts College* regarding the scope of the educational exemption vis-à-vis local zoning regulation was properly invoked by the judge. See *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 188-189 (1969); *Green* v. *Board of Appeals of Provincetown*, 404 Mass. 571, 573 (1989).

years),[11] the judge relied on the following findings and undisputed facts:[12] The two-story, 4,960 square foot barn was built between 1840 and 1850 and is "a wonderful example" of the transitional "Greek Revival Italianate" style. As such, it is "a rare building form" that possesses historic and architectural merit deserving of preservation. It is surrounded by mature trees and particularly dense foliage on the sides closest to adjoining lots. In order to comply with the by-law by relocating the barn elsewhere on Petrucci's lot, numerous mature trees would have to be cut down and removed (from both the old and the new locations), a new foundation excavated, the entire barn lifted up and moved to the new foundation, and its roof reconstructed to lower its height. All of that compliance work not only would destroy the barn's unique Italianate cupola and Palladian window, but also would adversely change the massing of the structure, disturb the sense of the building's continuity, and ruin both its historical character and architectural integrity. The cost to Petrucci to move the barn would be approximately $150,000, beyond the cost of renovating it to serve as a child care facility.[13] The municipality's legitimate concerns served by the setback and height requirements in the by-law — safety, aesthetics, and privacy[14] — would all be negatively affected by the

[11]At the trial on the issue of the reasonableness of requiring Petrucci's compliance with Westwood's rear yard, side yard, and building height requirements, the board called no witnesses and adduced no evidence to show how the imposition of those limitations on Petrucci's project would advance legitimate municipal concerns.

[12]The board does not complain that any of the judge's findings or the evidence presented by Petrucci's witnesses on which the judge relied was erroneous, except with respect to the finding regarding the estimated cost of compliance to relocate the barn. The board's challenge in that respect is wrong (see note 13, infra).

[13]The board incorrectly maintains that the evidence regarding the cost of the barn's relocation (and, hence, the "cost of compliance" highlighted by the Supreme Judicial Court in the Tufts College test) was tainted by hearsay. This assertion overlooks the fact that Petrucci testified to his own understanding of the cost to move the barn, based on his thirty-five years of experience as a licensed builder. See Colangeli v. Construction Serv. Co., 353 Mass. 527, 529-530 (1968); Varney v. Donovan, 356 Mass. 739 (1970); Larabee v. Potvin Lumber Co., 390 Mass. 636, 643 (1983). The judge noted that this testimony was received without objection. In any event, the judge ruled, quite appropriately in our view, that "it is a matter of common sense that the cost to move a structure of the size and age of this barn would be significant."

[14]The board does not disagree that these are the municipal purposes served by the relevant by-law requirements.

relocation of Petrucci's barn. In its new, unscreened location, the barn would be significantly closer and more visible to Petrucci's residence and to neighboring homes. As a result, the potential fire danger would be increased, the privacy of the Petruccis and their neighbors would be reduced, and the loss of so many trees would adversely impair the community's character. Were the barn not moved and the child care facility abandoned, all of the present zoning infirmities would continue to exist.

In light of this evidence, the judge determined that imposition of the town's dimensional requirements on the project would levy excessive costs of compliance on Petrucci and effectively deny the use of the premises for a child care facility; would serve no valid goals of municipal zoning regulation, see *Campbell* v. *City Council of Lynn*, 415 Mass. at 779; and would, in fact, detrimentally affect neighborhood safety, aesthetics, and privacy. Therefore, he was satisfied that Petrucci had carried his burden under *Tufts College* of showing the unreasonableness of requiring compliance with those requirements. We agree.[15] Contrast *Tufts College*, 415 Mass. at 762-764 (challenged zoning requirements were not shown to be unreasonable as applied to project because applicant failed to put in any evidence regarding estimated cost or difficulty or hardship of compliance, whereas municipality demonstrated that compliance would enhance safety and ease serious parking problems in the affected area).

3. *Judge's ordering of the permit.* The amended final judgment ordered the board, over its objection, to issue Petrucci a building permit for the child care facility. The board charged that such an order erroneously deprived abutters of their appel-

---

[15]The board's sole criticism of the judge's decision on the issue of regulatory reasonableness (other than its misplaced assertion that Petrucci's cost of compliance evidence was hearsay, see note 13, *supra*) is that Petrucci did not demonstrate what the profits might be from his venture, which, the board suggested, might easily support the cost of compliance and make it reasonable. The board's critique fails in two respects. First, it rests on the assumption, contrary to the record, that the child care facility would be a commercial, for-profit enterprise. Second, it is based on the premise that different standards for gauging the costs of compliance ought to apply for proprietary as opposed to nonprofit chid care facilities. That premise finds no support in the language of the statute, nor in its purpose. Such a discrimination on the basis of corporate form would tend to create a significant disincentive for the private sector to address the public purpose of making child care services as widely available as their need requires. See note 7, *supra*.

late rights under G. L. c. 40A, § 17. The board's theory was that so long as it was defending its decisions upholding the commissioner, abutters were adequately represented and not aggrieved; but that they might become aggrieved, on bases other than those relied on by the board, when the board issued the building permit. The judge observed that the board had failed to state that any such potential abutters even existed (much less to identify them or their supposedly novel, separate grievances) or to suggest any additional issues that might be raised by such hypothetical abutters. Consequently, he rejected the board's position as sheer speculation supported by no relevant authority. He was satisfied that the facts in this case encompassed every criticism of the project which an abutter might reasonably raise in a § 17 appeal and reflected the board's protective persistence in pursuing all legitimate issues. The judge's refusal to allow further delay in implementing Petrucci's lawful project appears eminently sound to us. It was an exercise of his discretion under § 17 to grant such relief "as justice and equity may require," since it is clear from the record that the same ultimate result would ensue from an unspecific remand as that effected by the challenged order. See *Chira* v. *Planning Bd. of Tisbury*, 3 Mass. App. Ct. 433, 439-440 (1975), and cases cited; *Selectman of Stockbridge* v. *Monument Inn, Inc.*, 8 Mass. App. Ct. 158, 163 (1979), and cases cited, *S.C.*, 14 Mass. App. Ct. 957 (1982). Cf. *Lapenas* v. *Zoning Bd. of Appeals of Brockton*, 352 Mass. 530, 533-534 (1967); *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 512, 520 (1976); *Leominster Materials Corp.* v. *Board of Appeals of Leominster*, 42 Mass. App. Ct. 458, 463 (1997).

*Judgment affirmed.*