62 Mass. App. Ct. 25 (2004)                                      25

Martha's Vineyard Land Bank Commission *v.* Board of Assessors of West Tisbury.

## MARTHA'S VINEYARD LAND BANK COMMISSION *vs.* BOARD OF ASSESSORS OF WEST TISBURY.

No. 02-P-1638.

Suffolk. February 2, 2004. - September 15, 2004.

Present: LAURENCE, KAPLAN, & BECK, JJ.

*Martha's Vineyard Land Bank Commission. Taxation,* Real estate tax: abatement, Real estate tax: exemption.

The Appellate Tax Board erred in denying the petition of the plaintiff (a land bank commission established by the Legislature as a public instrumentality for the purposes of acquiring, managing, protecting, and preserving various resources for the benefit and welfare of the citizens of Martha's Vineyard) for abatement of the last two quarterly payments of the real property tax assessed for a fiscal year on a piece of land that the plaintiff had purchased during the course of the fiscal year, where, under the plain and unambiguous language of § 4G of the plaintiff's enabling act, St. 1987, c. 736, § 9, the plaintiff was exempt from and did not have to pay any taxes, including the tax at issue. [27-33]

APPEAL from a decision of the Appellate Tax Board.

*Adam P. Kahn* for the taxpayer.

*Ellen M. Hutchinson* for Board of Assessors of West Tisbury.

LAURENCE, J. The Martha's Vineyard Land Bank Commission (commission) has appealed a decision of the Appellate Tax Board (ATB) that denied the commission's petition for abatement of the last two quarterly payments of the real property tax assessed for fiscal year 2002 on a piece of land in West Tisbury then owned by the commission. The ATB's decision was unaccompanied by findings (unsurprisingly, since the parties had stipulated to the material facts) or opinion. It upheld a decision of the board of assessors of West Tisbury (assessors) that had denied — also without findings or opinion — the commission's application for abatement.

The tax in question had been duly assessed as of January 1,

2001 (pursuant to G. L. c. 59, §§ 11 and 21), on the land in question, which was owned of record on that date by a private party, who subsequently made the first two preliminary tax payments on the assessment. That private owner then sold the property to the commission on October 30, 2001. The last two quarterly tax bills, addressed to the original owner but sent to the commission, remain unpaid. See G. L. c. 59, § 64, allowing appeal without payment of the tax if it is less than $3,000.

The commission takes the position that its enabling act, St. 1985, c. 736, as amended by St. 1987, c. 673, explicitly provides for an exemption from the tax as of and from the date it acquired the property.[1] The assessors assert that the taxable status of property within the municipality for the fiscal year is fixed as of the January 1 assessment date according to the tax status of the record owner. Therefore, the assessors contend, the land at

---

[1] The specific statutory provision relied on by the commission is § 4G of its enabling act, inserted by St. 1987, c. 673, § 9, which states in pertinent part: "The [commission] and *all its revenues, income and real and personal property used solely . . . in furtherance of its public purposes shall be exempt from taxation* and from betterments and special assessments and *[it] shall not be required to pay any tax, excise or assessment to or for* the commonwealth or *any of its political subdivisions*" (emphasis added). The commission was created by its enabling act as a "public instrumentality," see St. 1987, c. 673, § 3, amending St. 1985, c. 736, § 2, for the purposes of acquiring, managing, protecting and preserving various resources for the benefit and welfare of the citizens of Martha's Vineyard, including agricultural land, forest land, scenic land, land for nature and wildlife preserves, trail easements, beaches, marshes, wetlands and aquifers on the island. St. 1985, c. 736, §§ 2, 5. The exercise of the commission's authority was declared to be "an essential governmental function," St. 1987, c. 673, § 3, and the entire enabling act was to be "liberally construed" as necessary for the welfare of the towns and inhabitants of the island, St. 1987, c. 673, § 16, inserting § 14A. There exists no relevant legislative history explaining the Legislature's purpose in creating the commission or in providing for its exemption from taxes; however, the tax exemption provision was part of a series of 1987 amendments to the original enabling act, the manifest purpose of which was to increase the revenues available to the commission to carry out its essential public purposes. See §§ 4A-4G of the enabling act, inserted by St. 1987, c. 673, § 9. We also note that, in a related context, the Legislature has recognized the regional and statewide public interest in preserving and enhancing Martha's Vineyard's "unique natural, historical, ecological, scientific, cultural and other values," particularly protection and preservation of its character and environment against undesirable development. *Johnson* v. *Edgartown*, 425 Mass. 117, 120 (1997), quoting from St. 1977, c. 831, § 1.

issue here, being taxable as of January 1, 2001, continued to be subject to the tax through the remainder of the fiscal year, although the assessors also cryptically state that "there is no obligation imposed on [the commission], by the town of West Tisbury, to pay the [fiscal year] 2002 taxes."[2]

We conclude that, under the plain and unambiguous language of its enabling act, the commission is exempt from and does not have to pay any taxes, including the tax at issue.[3]

As always when the meaning of a statute is at issue, the initial inquiry focuses on the actual language of that statute. *International Fid. Ins. Co.* v. *Wilson,* 387 Mass. 841, 853 (1983). "Where the language of a statute is clear and unambiguous, it is conclusive as to legislative intent," *Pyle* v. *School Comm. of S. Hadley,* 423 Mass. 283, 285 (1996), and "the courts enforce

---

[2]It has long been recognized that a subsequent sale of real estate after the January 1 assessment date during that calendar year does not change or alleviate the obligation to the municipality of the January 1 owner to pay the real estate taxes assessed. See *Irving Usen Co.* v. *Assessors of Boston,* 309 Mass. 544, 545 (1941); *Southeastern Regional Planning & Economic Dev. Dist.* v. *Dartmouth,* 6 Mass. App. Ct. 209, 212-213 (1978). The assessors therefore maintain that their mailing of bills to the commission with respect to the last two tax payments (under the quarterly system of tax bills adopted by West Tisbury pursuant to G. L. c. 59, § 57C), which were addressed to and in the name of the former private owner, did not actually constitute subjecting the commission's property to taxation and that there was consequently no legal obligation on the commission to pay those fiscal year 2002 taxes — a position the commission fears is a snare for the unwary. In light of our conclusions, there is no need to address either the assessors' puzzling, scholastically technical distinctions or the commission's concerns, beyond what is discussed in note 5, *infra.*

[3]Before treating the substance of the controversy, we briefly digress to reject the assessors' arguments (supported by no relevant authority) that the commission's appeal is procedurally defective because it did not request findings and a legal rationale from the ATB under G. L. c. 58A, § 13 — which nothing in that statute requires a party to do — thereby allegedly depriving the ATB of the deference courts ordinarily accord its interpretation of tax statutes; and that the appeal is therefore not subject to our de novo review. It is enough to recall that, when reviewing such a decision, "the sole question before us is whether the [ATB] erred as a matter of law," *Commissioner of Rev.* v. *Houghton Mifflin Co.,* 423 Mass. 42, 43 (1996), and that an appellate court has plenary power of de novo review of all questions of law, see *White* v. *Commissioner of Dept. of Employment & Training,* 40 Mass. App. Ct. 249, 250 n.1 (1996), including questions of law involving statutory construction. See *Commonwealth* v. *Cintolo,* 415 Mass. 358, 359 (1993) ("Statutory interpretation is a pure question of law").

28 62 Mass. App. Ct. 25 (2004)

Martha's Vineyard Land Bank Commission *v.* Board of Assessors of West Tisbury.

the statute according to its [plain] wording," *Weitzel* v. *Travelers Ins. Cos.*, 417 Mass. 149, 153 (1994), which " 'we are constrained to follow' . . . [so long as] its application would not lead to an 'absurd result' . . . ." *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999), quoting from *White* v. *Boston*, 428 Mass. 250, 253 (1998). "[W]hen a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Beaupre* v. *Cliff Smith & Assocs.*, 50 Mass. App. Ct. 480, 491 (2000), quoting from *Estate of Cowart* v. *Niklos Drilling Co.*, 505 U.S. 469, 475 (1992). "[We] need not look beyond the words of the statute itself" in such a case, *Massachusetts Broken Stone Co.* v. *Weston*, 430 Mass. 637, 640 (2000), even if "we . . . recognize a potential unfairness within a statute's clear language . . . . [or] that a statute creates a potential anomaly." *Commonwealth* v. *Mandell*, 61 Mass. App. Ct. 526, 528 (2004).

Section 4G of the commission's enabling act, inserted by St. 1987, c. 673, § 9, see note 1, *supra*, contains just such plain, clear, and unambiguous language[4] that puts an end to the controversy. As if anticipating this very situation, the Legislature provided the commission with exemptive suspenders as well as a belt. The commission's real property is first imbued with a mandatory general exemption from taxation of any sort during the period when it is "used solely . . . in furtherance of its public purposes" — a use that the parties stipulated was in fact made of the property here at issue from and after October 30, 2001. Then, that categorical exemption is functionally reinforced

---

[4]"A statute is plain and unambiguous if 'virtually anyone competent to understand it, and desiring fairly and impartially to ascertain its signification, would attribute to the expression in its context a meaning such as the one we derive, rather than any other; and would consider any different meaning, by comparison, strained, or far-fetched, or unusual, or unlikely.' " *New England Med. Center, Inc.* v. *Commissioner of Rev.*, 381 Mass. 748, 750 (1980), quoting from *Hutton* v. *Phillips*, 45 Del. 156, 160 (1949). To the extent plain meaning depends upon context, compare Restatement (Second) of Contracts § 212(1) comment b (1981) (the "meaning [of a writing] can almost never be plain except in a context"), that context is here provided by the provisions of the enabling act in addition to the tax exemption, as set forth in note 1, *supra*, and discussed further, *infra*.

by the immediately following language, which explicitly frees the commission from having to pay *any* State or local tax or assessment on its real property so used or otherwise.[5]

The assessors' primary argument against the extent of the tax exemption claimed by the commission rests upon a comparative

---

[5]The commission posits — without citing any relevant precedent and in the absence of any such argument being made by the assessors — that it ultimately may bear the responsibility for payment of the remaining fiscal year 2002 real estate taxes, even though they may not be technically "assessed" to it. This concern arises from the commission's "worst case scenario" that if the private record owner as of January 1, 2001, fails to make those payments and the taxes remain unpaid, the assessors would proceed to enforce their tax lien (which was automatically imposed against the property as security for payment upon assessment, pursuant to G. L. c. 60, § 37), thereby requiring the commission either to pay the tax or face the risk of foreclosure on and loss of the property. This apprehended consequence appears, however, of negligible concern, in light of the clarity and sweep of the commission's comprehensive tax exempt status, as discussed above, coupled with the principles that (a) laws for the assessment and collection of taxes, including tax lien statutes, are to be strictly construed, with all doubts resolved in favor of the taxpayer, see *Collector of Taxes of Boston* v. *Revere Bldg., Inc.*, 276 Mass. 576, 579 (1931); *Boston* v. *Cable*, 306 Mass. 124, 126 (1940); (b) as a matter of public policy, property held for and devoted to a public use by one municipality or public instrumentality within the territorial limits of another municipality is not subject to municipal taxation or municipal efforts to enforce unpaid assessed taxes, see *Somerville* v. *Waltham*, 170 Mass. 160, 161 (1898); *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491, 495-496 (1906); *Collector of Taxes of Milton* v. *Boston*, 278 Mass. 274, 277 (1932); 72 Am. Jur. 2d State and Local Taxation § 814 (2001); and (c) we will not construe or apply a statute so as to produce a result contrary to the manifest legislative purpose in its enactment, or so as to make a nullity of its pertinent provisions or create otherwise unreasonable or absurd consequences, see *Commissioner of Corps. & Taxn.* v. *Boston Ins. Co.*, 328 Mass. 641, 645-646 (1952); *Manning* v. *Boston Redev. Authy.*, 400 Mass. 444, 453 (1987). It could not have been the intention of the Legislature that the statutory lien upon real estate could be enforced against the commission, effectively compelling it to pay the very taxes on its property which the Legislature quite explicitly declared it should be exempt from paying, particularly when that tax exemption was an integral part of a number of steps taken by the Legislature to enhance the commission's revenues so as to facilitate the discharge of its public responsibilities. See note 1, *supra.* Compare *Assessors of Newton* v. *Pickwick Ltd.*, 351 Mass. 621, 624 (1967). Accordingly, the commission's exemption must, by "necessary implication," be deemed to extend to lien foreclosure, since allowing foreclosure to proceed "would completely negate the legislative intent to exempt all of the [commission's] property from taxation," *id.* at 624-625 (involving a tax exemption provision in a public authority's enabling act that was identical to the commission's here), thereby enabling it to maximize the public benefit it was created to achieve.

reference to the tax exemption provision in the enabling act of the Nantucket Islands Land Bank, a public instrumentality created with essentially the same purposes and powers as, and almost contemporaneously with, the commission. That provision, as appearing St. 1987, c. 666, § 3 (amending St. 1983, c. 669, § 8), states that the Nantucket Islands Land Bank's "[r]eal property held in [its] name . . . or [in the name of] its designee shall be exempt from property taxes as of the date of acquisition of title by the . . . land bank or its designee; and any taxes assessed against such real property interests shall be abated for that portion of any fiscal year during which the real property interests was [sic] owned by . . . land bank or its designee."[6]

The assessors direct us to the canons of statutory construction teaching that related statutes are to be construed together to produce a harmonious, systemic whole and that differences in language between such statutes must reflect different intended meanings. Relying on those maxims, the assessors assert that the absence of the words "as of the date of acquisition of title" from the commission's exemption provision demonstrates that the commission's tax exemption must be narrower and, with respect to property acquired after January 1, 2001, cannot arise until the following fiscal year's assessment, January 1, 2002.

The assessors' invocation of those canons is, however, inapposite. Like all such interpretive principles, they "do[] not apply when (as here) the statutory language is so clear as to make extrinsic aids unnecessary, especially . . . aid[s] whose application would be contrary to the Legislature's undoubted purpose." *Petrucci* v. *Board of Appeals of Westwood*, 45 Mass. App. Ct. 818, 823 n.8 (1998). See *Brook House Condominium Trust* v. *Automatic Sprinkler Appeals Bd.*, 414 Mass. 303, 306 (1993). When "statutory language . . . is sufficiently clear . . . we need not seek further enlightenment from other sources."

---

[6]As with the commission's enabling act, no legislative history exists for any aspect of the Nantucket Islands Land Bank, including the language of its tax exemption provision and particularly regarding the unexplained category of "designee," which nowhere appears in the Martha's Vineyard statute.

*New England Med. Center Hosp., Inc.* v. *Commissioner of Rev.*, 381 Mass. 748, 750 (1980).[7]

"Although [the] clear statutory language . . . [in this case] obviates the need to resort to rules of interpretation" meant to help resolve ambiguities, such rules can "be referenced by way of supplementary confirmation of the intent reflected in the words used." *Petrucci* v. *Board of Appeals of Westwood*, 45 Mass. App. Ct. at 822 n.7. Such confirmation is here provided by the statutory context, see note 4, *supra*, particularly the Legislature's buttressing of the commission's powers with the explicit declarations that their exercise is to be deemed "an essential governmental function" and that the entire enabling act is to be "liberally construed" to effect the public purposes set forth therein for the welfare of the inhabitants of Martha's Vineyard. See note 1, *supra*.

"The doctrine of essential governmental functions prohibits municipalities from regulating entities or agencies created by the Legislature in a manner that interferes with their legislatively mandated purpose . . . or otherwise hinders the accomplishment of [the] statutory mandate." *Greater Lawrence Sanitary Dist.* v. *North Andover*, 439 Mass. 16, 21-22 (2003). "The scope of the immunity [provided by that doctrine] is broad," and extends to agency actions that are "reasonably related" to fulfilling its essential governmental function. *Bourne* v. *Plante*, 429 Mass. 329, 332 (1999). Although this doctrine "does not . . . [provide an agency with] absolute immunity from all local regulations," it does apply to municipal actions that in fact "interfere with [the agency's] essential governmental purposes"

---

[7]Moreover, in the total absence of legislative history and without more meaningful indicators than are here presented of the Legislature's purpose when using different language in one of two related statutes, we cannot know whether material or significant change and different meaning were intended in the one but not the other, or whether the differing language reflected only clarification, fine tuning, and refinement. See *Globe Newspaper Co.* v. *Beacon Hill Architectural Commn.*, 421 Mass. 570, 577-581 (1996). See also *Assessors of Newton* v. *Pickwick Ltd.*, 351 Mass. at 624-626 (that the Legislature has provided specific tax exemptions for a certain category of taxpayers in some statutes "does not necessarily preclude [implying] a similar [legislative] intent in the present circumstances" when an exemption must be deemed to have been intended "by necessary implication" because of the important public purposes involved, those purposes being "of controlling significance in construing an express exemption from taxation").

and have more than "a negligible effect on its operations." *Greater Lawrence Sanitary Dist.* v. *North Andover, supra* at 22. Subjecting the commission's revenues to up to a year's real estate taxation by each of the several municipalities on Martha's Vineyard every time the commission acquires property on a date other than January 1 of each year would manifestly strike at the commission's raison d'etre and could significantly erode its intended utility by reducing its revenues available for increasing the island's land reserves dedicated to the environmental, conservation, and other vital public purposes specified in its enabling act. See note 1, *supra*.[8]

The provision mandating liberal construction has been held, in the case of this very commission, to modify the conventional presumptions of statutory construction in favor of the commission in order to effectuate its stated purposes. See *Long* v. *Martha's Vineyard Land Bank Commn.*, 35 Mass. App. Ct. 546, 549 (1993). Moreover, the principle of liberal construction militates against any interpretation or application that would create results inconsistent not only with the words but also with the public purposes expressed in the underlying statute. See *Gross* v. *Prudential Ins. Co. of America*, 48 Mass. App. Ct. 115, 120 (1999). Cf. *Assessors of Newton* v. *Pickwick Ltd.*, 351 Mass. 621, 624-626 (1967) (a statute conferring on a public authority a tax exemption that "primarily benefit[s]" the public by improving the authority's finances had to be liberally read to extend the exemption to the authority's lessees "by necessary implication," so as to prevent dissipation of the authority's revenues by having the lessees reduce their rental payments by the amount of any tax, because "[t]he [authority's] public purpose is of controlling significance in construing [the] express

---

[8]Although the tax here at issue was imposed on six acres of vacant land and the unpaid portion amounts to only $692.05, the commission at oral argument credibly asserted that the potential financial impact of taxability in such situations is far from negligible and could be substantial — a conclusion readily confirmed by the single recent example of the commission's June, 2004, purchase of 190 acres in Oak Bluffs for a price of $18,600,000. The half-year tax liability of the commission on that single property, were the ATB decision to be upheld, would be well over $40,000 (assuming a current tax rate identical to that of West Tisbury in fiscal year 2002). See the Vineyard Gazette Online for article, Land Bank Bids for a Woodlands Preserve, originally published March 26, 2004.

exemption from taxation"); *Redgrave* v. *Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 99 (1987) (situations that are "within the reason, although not within the letter, of a remedial statute are embraced by its provisions" under the aegis of liberal construction); *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996), quoting from *Lehan* v. *North Main St. Garage*, 312 Mass. 547, 550 (1942) ("If a liberal, even if not literally exact, interpretation . . . is necessary to accomplish the [statute's] purpose . . . such interpretation is to be adopted rather than one which will defeat that purpose").

Thus protected by the sword, shield, and buckler of several clear provisions of its enabling act, the commission is entitled to the real estate tax exemption and tax abatement that it claims with respect to the property at issue. We accordingly reverse the ATB's decision and a new decision is to enter granting to the commission an abatement for the unpaid portion of the West Tisbury fiscal year 2002 real estate tax on that property.[9]

*So ordered.*

---

[9]We may briefly dismiss the assessors' other points as insubstantial. Their assertion that a plain reading of the commission's tax exemption would produce an unworkable result is wholly unexplained, speculative, conclusory, and unsupported by cogent argument or authority, as required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Their contention that the commission can accommodate the tax by contractually providing for its payment by sellers not only fails to acknowledge that the commission acquires land by devise and eminent domain as well as by outright purchase (see St. 1985, c. 736, § 4), but also fails to recognize that rational sellers would presumably reflect that added cost in demanding a proportionally higher price, which would leave the commission in the position of ultimately paying those taxes and inevitably reduce its funds available for public benefit.