CHARLES J. HOUSMAN,[1] trustee,[2] vs. LBM FINANCIAL, LLC.

No. 10-P-611.

Norfolk. January 18, 2011. - August 25, 2011.

Present: LENK, GRAHAM, & FECTEAU, JJ.[3]

*Mortgage,* Discharge, Foreclosure. *Statute,* Construction.

The clear and unambiguous language of G. L. c. 260, § 33, the "Obsolete
    Mortgages" statute, which discharges as matter of law all mortgages five
    years after the date on which they become due, unless an extension,
    acknowledgment, or affidavit is recorded within that period of time, by its
    operation caused to be discharged a mortgage held by the defendant, where
    neither a loan modification agreement nor an amendment to the mortgage,
    each of which purported to extend the mortgage's maturity date, were
    timely recorded, and it was of no consequence that the plaintiff, the owner
    of the property in question, may have had notice of the mortgage or the
    extension [216-219]; further, the statute by its operation nullified the
    defendant's foreclosure by exercise of the power of sale of the property,
    which was begun within five years of the expiration of the mortgage term
    but not concluded within the prescribed five-year period [219-221].

CIVIL ACTION commenced in the Superior Court Department on
July 8, 2008.

A motion to dismiss was heard by *Elizabeth B. Donovan,* J.,
and entry of judgment was ordered by *Patrick F. Brady,* J.

*Arnold E. Cohen* for the plaintiff.

*Floyd H. Anderson* for the defendant.

GRAHAM, J. The plaintiff, Charles J. Housman, trustee of Pine
Banks Nominee Trust (Pine Banks), brought an action in Su-
perior Court seeking a declaratory judgment that a mortgage

---

[1]There is some discrepancy in the record as to the spelling of the plaintiff's
last name. We refer to the plaintiff by the spelling used by the parties in their
briefs.

[2]Of Pine Banks Nominee Trust.

[3]Justice Lenk participated in the deliberation on this case while an Associate
Justice of this court, prior to her appointment as an Associate Justice of the
Supreme Judicial Court.

held by the defendant, LBM Financial, LLC (LBM), on a property that Pine Banks had acquired in a foreclosure sale was discharged pursuant to G. L. c. 260, § 33, the "Obsolete Mortgages" statute, and that the defendant's foreclosure sale of the property was therefore void. A judge of the Superior Court concluded that the defendant's mortgage remained valid, the statutory requirements notwithstanding, because the plaintiff had knowledge of the extension, and granted the defendant's motion to dismiss, later entering a judgment dismissing the plaintiff's claim.

On appeal, the plaintiff argues that the motion judge erred as matter of law in concluding that the statute did not discharge the mortgage, that the judge improperly concluded that the plaintiff had knowledge of the extension, and that the plaintiff's complaint survives the remaining arguments advanced in the defendant's motion to dismiss. We agree that the judge erred in the application of the statute and, accordingly, reverse.

*Background.* We summarize the relevant facts, which are undisputed. On May 9, 2003, Bernard Laverty, owner of 1736 Liberty Street, Unit F, in Braintree (property), granted a mortgage to LBM on the property (LBM mortgage) to secure his personal guaranty of a loan granted by LBM to a corporation in which Laverty was a shareholder.[4] The LBM mortgage stated that it had a term of four months and was recorded in the Norfolk County registry of deeds.[5]

On September 9, 2003, the parties to the note, LBM and several of the loan guarantors, executed an allonge, a loan modification agreement, and an amendment to the mortgage. The latter two documents each purported to extend the maturity date of the LBM mortgage to April 9, 2004. None of these documents was recorded.

On June 27, 2004, Laverty granted a mortgage on the same

_____

[4]The corporation, 655 Corp., obtained a $1.2 million construction loan from LBM to develop a condominium project in the South Boston section of Boston. The loan was secured by mortgages on ten properties, including the property at issue here and a second property also owned by Laverty (Unit C-1).

[5]The defendant argues that the inclusion of a maturity date was the result of a mutual mistake and the mortgage should be reformed to reflect the intention of the parties to enter into a mortgage without a term. We need not address this claim for the reasons set forth in this opinion.

property to Pine Banks (Pine Banks mortgage) to secure a $225,000 personal loan. Laverty defaulted on the loan, and Pine Banks foreclosed on the property and took title, subject to the LBM mortgage, on August 17, 2007.[6]

On April 15, 2008, LBM commenced an action to begin the process of foreclosing on the property.[7] Pine Banks filed a complaint in Superior Court, alleging that the LBM mortgage was void on several grounds. Pine Banks also filed an ex parte motion for a temporary restraining order, granted July 8, 2008, to enjoin LBM's foreclosure of the property pending further hearing. After a hearing on August 5, 2008, Pine Banks' request for a preliminary injunction was denied. LBM subsequently held a foreclosure sale on the property on September 16, 2008.

Pine Banks filed an amended complaint on March 19, 2009, seeking, in addition to its existing claims, a declaratory judgment that the LBM mortgage was discharged pursuant to G. L. c. 260, § 33, and the foreclosure sale a nullity (count I). LBM filed a motion to dismiss, alleging five grounds in support of the continued validity of the LBM mortgage.[8]

On June 8, 2009, LBM's motion to dismiss was allowed "for

---

[6]Laverty also granted Pine Banks a mortgage on Unit C-1 and defaulted. Pine Banks foreclosed on both properties, subject to LBM's mortgages. Unit C-1 was conveyed to the Beach Street Trust, which subsequently conveyed the property to Shamus Holdings, LLC. Pine Banks filed suit to enjoin LBM's foreclosure of this property, which was denied in a Superior Court memorandum and order dated July 27, 2007. Shamus Holdings, LLC, filed a voluntary petition for bankruptcy. In re Shamus Holdings, LLC, 409 B.R. 598, 607 (Bankr. D. Mass. 2009) (granting a debtor's motion for summary judgment and concluding that the plain language of G. L. c. 260, § 33, required that a purported extension of the mortgage must be recorded to be valid).

[7]LBM's complaint was an action to establish compliance with the Soldiers' and Sailors' Civil Relief Act. See St. 1990, c. 496.

[8]LBM's motion included an affidavit from counsel and several supporting documents, including copies of the allonge, the loan modification agreement, and the amendment to the mortgage. In its motion in opposition, Pine Banks objected to the inclusion of such documents. It has no effect on our analysis, and therefore we do not decide, whether the inclusion of additional documents converted LBM's motion into a motion for summary judgment under Mass. R.Civ.P. 56, 365 Mass. 824 (1974). See Stop & Shop Cos. v. Fisher, 387 Mass. 889, 892 (1983). We do note, however, that as with a motion pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), the legal conclusions of a grant of summary judgment are reviewed de novo. See Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 243 (2007), cert. denied, 552 U.S. 1099 (2008).

the reasons set forth in defendant's [memorandum.] The plaintiff's 'argument' that the 'loan modification [amendment]' not being recorded precludes the defendant from foreclosing is without merit. A [recording] provision is to put the world on notice. Here, plaintiff had notice." Pine Banks subsequently filed a stipulation to dismiss counts II through VII of its amended complaint. A judgment issued on December 17, 2009, dismissing count I pursuant to the order allowing LBM's motion to dismiss. This appeal followed.

*Discussion.* Rule 12(b)(6) of the Massachusetts Rules of Civil Procedure, 365 Mass. 754 (1974), provides for the dismissal of a claim that "fail[s] to state a claim upon which relief can be granted." We review the grant of a motion to dismiss de novo, and "[w]e accept as true the allegations in the complaint and draw every reasonable inference in favor of the plaintiff." *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. 674, 676 (2011). "Factual allegations must be enough to raise a right of relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true . . . ." *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008), quoting from *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007).

The motion judge's order on the defendant's motion to dismiss concluded that the LBM mortgage was not discharged by G. L. c. 260, § 33, and referred specifically to the recording requirements of the statute. General Laws c. 260, § 33, as amended by St. 2006, c. 63, § 6, provides that any mortgage containing a stated maturity date expires and is discharged five years after that maturity date unless, before the expiration of such period, an extension of the mortgage is recorded, or an acknowledgment or affidavit that the mortgage is not satisfied is recorded, both of which are subject to the requirements of G. L. c. 260, § 34. Specifically, § 33 provides, in relevant part:

> "A power of sale in any mortgage of real estate shall not be exercised and an entry shall not be made nor possession taken nor proceeding begun for foreclosure of any such mortgage after the expiration of, in the case of a mortgage in which no term of the mortgage is stated, 35 years from the recording of the mortgage or, in the case of

a mortgage in which the term or maturity date of the mortgage is stated, 5 years from the expiration of the term or from the maturity date, unless an extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied, *is recorded* before the expiration of such period. In case an extension of the mortgage or the acknowledgment or affidavit is so recorded, the period shall continue until 5 years shall have elapsed during which there is not recorded any further extension of the mortgage or acknowledgment or affidavit that the mortgage is not satisfied. The period shall not be extended by reason of . . . agreement, extension, acknowledgment, affidavit or other action not meeting the requirements of this section and sections 34 and 35. Upon the expiration of the period provided herein, the mortgage shall be considered discharged for all purposes without the necessity of further action by the owner of the equity of redemption or any other persons having an interest in the mortgaged property. . . ." (Emphasis added.)

The amended statute took effect on October 1, 2006. Statute 2006, c. 63, § 8, provides that the amendment "shall apply to all mortgages, whether recorded before, on or after the effective date hereof, except that, the term of a mortgage which as a result of [G. L. c. 260, § 33,] would expire within 1 year after the effective date of this act shall be extended for a period of 1 year from the effective date of this act [October 1, 2007]."

The motion judge evidently concluded that the recording requirements of § 33 are inapplicable where the party seeking a declaration that the mortgage has been discharged has actual notice of an extension of the maturity date.[9] When the meaning of a statute is at issue, we look first to the actual language of the statute. See *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983); *Martha's Vineyard Land Bank Commn.* v. *Assessors of West Tisbury*, 62 Mass. App. Ct. 25, 27 (2004). Where the language of a statute is clear and unambiguous, "judicial inquiry into the statute's meaning, in all but the

---

[9]Pine Banks argues on appeal that the record before the trial court on LBM's motion to dismiss did not support the conclusion that Pine Banks had knowledge of the extension. Because we conclude that notice is irrelevant, we need not address this argument.

most extraordinary circumstance, is finished." *Beaupre* v. *Cliff Smith & Assocs.*, 50 Mass. App. Ct. 480, 491 (2000), quoting from *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992). We cannot look beyond the words of the statute in such a case, even if "we . . . recognize a potential unfairness within a statute's clear language . . . [or] a statute creates a potential anomaly" (footnote omitted). *Commonwealth* v. *Mandell*, 61 Mass. App. Ct. 526, 528 (2004).

We conclude that the meaning of the statute is clear on its face. The language of the statute plainly discharges as matter of law all mortgages five years after the date on which they became due, unless an extension, acknowledgment, or affidavit is recorded within that period of time. The requirements of the statute are clear and must be strictly satisfied.

Our reading of the statute finds support in Federal court decisions interpreting the same language. Rejecting the argument that § 33 applies only to defunct or inactive mortgages, the United States Bankruptcy Court concluded, "[t]he language of the Obsolete Mortgages [s]tatute is unambiguous and contains no exceptions. A mortgagee's actions, short of timely recording an appropriate document, are ineffective to extend an expired mortgage. Had the legislature intended the Obsolete Mortgages [s]tatute to have a more narrow application, . . . it was certainly capable of drafting the statute accordingly." *In re 201 Forest St., LLC*, 404 B.R. 6, 10 (Bankr. D. Mass. 2009). Reversing on other grounds, the reviewing court agreed that "[t]he effect of the Obsolete Mortgages [s]tatute is to extinguish the mortgagee's rights as mortgagee." *LBM Fin., LLC* v. *201 Forest St., LLC*, 422 B.R. 888, 893 n.7 (B.A.P. 1st Cir. 2010). The Bankruptcy Court also considered LBM's attempted foreclosure of another property owned, for a period, by Pine Banks, subject to LBM's mortgage on it, and reached the same conclusion we adopt today, finding that a purported extension is invalid if not recorded pursuant to the requirements of § 33. See *In re Shamus Holdings, LLC*, 409 B.R. 598, 602 (Bankr. D. Mass. 2009). See also *Motta* v. *Andre*, 434 B.R. 193, 201 (Bankr. D. Mass. 2010).

We also find support for our approach in the decisions of other States, which have strictly construed the recording requirements of mortgage extensions. The Supreme Court of Iowa

concluded that the failure to record an extension precludes an action between mortgagor and mortgagee to foreclose a mortgage that has been discharged pursuant to the State's "Foreclosure of Ancient Mortgages" statute. See *Willow Tree Invs., Inc.* v. *Wilhelm*, 465 N.W.2d 849, 850 (Iowa 1991). See also *Pro-Max Corp.* v. *Feenstra*, 117 Nev. 90, 95 (2001) (concluding a similar statute in Nevada was unambiguous and operated to extinguish any debt on real property secured by a deed of trust ten years after the debt becomes due in the absence of a recorded extension).

In this instance, the LBM mortgage became due by its own terms on September 9, 2003. Assuming without deciding that the loan modification agreement and the amendment to the mortgage were properly before the motion judge for consideration, the documents do not operate to extend the maturity date of the mortgage because neither was recorded, as required by § 33 for a valid extension. The LBM mortgage was therefore discharged by operation of law on September 9, 2008. LBM lacked good title to the property as of that date and, therefore, the foreclosure sale of September 16, 2008, was a nullity.

The motion judge concluded, and LBM maintains on appeal, that the failure to record the extension is irrelevant because Pine Banks had actual knowledge that LBM considered the mortgage to be active. In most instances, the mortgagor who signs or otherwise has actual knowledge of an extension will be the mortgagor when the mortgagee initiates a foreclosure action, but the language of the statute clearly requires recording for an extension to be valid, and to hold otherwise is to ignore its plain meaning. It is of no consequence that Pine Banks may have had notice of the LBM mortgage or the extension because LBM failed to comply with the requirements of § 33.

The date on which LBM filed its initial action in the attempted foreclosure is also irrelevant. LBM argues that § 33 prohibits the initiation of a foreclosure action after the expiration of the relevant five-year period, but does not nullify a foreclosure proceeding that was begun within five years of the expiration of the mortgage term, even if it was not *concluded* within the prescribed five-year period. We think it clear that § 33 establishes a limitation beyond which the actual sale of the mortgaged property cannot be conducted, regardless of

whether actions related to the sale occurred prior to the expiration of the relevant five-year period.

Foreclosure may be accomplished by means other than by power of sale,[10] and § 33 refers in particular to three methods of foreclosure — "power of sale," "entry . . . [and] possession," and "[judicial] proceeding" — and limits the time within which each action may be undertaken. Relevant in this instance is the statutory prohibition on the "exercise" of a power of sale five years from the maturity date of the mortgage. It is well-settled that the power of sale is exercised at the time of the actual sale and terminates the owner's equity of redemption. "The effect of the exercise of the power of sale [is] to terminate the estate of the mortgagor by forever barring him and those claiming under him from all right and interest in the mortgaged premises, which he had before the sale, and transferring an absolute estate to the mortgagee." *Santiago* v. *Alba Mgmt., Inc.*, 77 Mass. App. Ct. 46, 49 (2010), quoting from *Charlestown Five Cents Sav. Bank* v. *White*, 30 F. Supp. 416, 418-419 (D. Mass. 1939). See *Williams* v. *Resolution GGF OY*, 417 Mass. 377, 384 (1994) ("The execution of the memorandum of sale terminated [the plaintiff's] equity of redemption"); *Outpost Cafe, Inc.* v. *Fairhaven Sav. Bank*, 3 Mass. App. Ct. 1, 7 (1975) (mortgagor's equity of redemption barred at least as early as the execution of the memorandum of sale).

A plain reading of § 33 makes clear that it is the exercise of the power of sale — the sale itself — that is prohibited beyond the prescribed time period. LBM correctly points out that the sale of the mortgaged property must be preceded by statutorily-prescribed noticing actions pursuant to G. L. c. 244, § 14, which governs the procedure for foreclosure by power of sale, but it does not follow that those enumerated actions toll the limitations period. Section 33 unambiguously singles out the exercise of the power of sale for purposes of the operation of the statute. We note that the designation of the sale itself as the relevant significant act is consistent with the requirements of G. L. c. 244, § 14. Section 14 provides, in relevant part, that a "mortgagee . . . may, upon breach of condition and without action, do all

---

[10]See G. L. c. 244, §§ 1-10. See also Eno & Hovey, Real Estate Law § 10.1 (2004).

the acts authorized or required by the power [of sale]; but no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, notice thereof has been published . . . and notice thereof has been sent by registered mail to the owner or owners of record of the equity of redemption as of thirty days prior to the date of sale . . . ." G. L. c. 244, § 14, as amended through St. 1998, c. 142. The notice requirements prescribed by statute are necessary antecedents to the exercise of the power of sale, but do not constitute the exercise thereof.

Our case law has reflected this distinction between notice requirements, compliance with which is required to successfully conduct a foreclosure by power of sale, and the exercise of the power of sale itself. Considering the requirements of § 14, the Supreme Judicial Court in *U.S. Bank Natl. Assn.* v. *Ibanez*, 458 Mass. 637, 647-648 (2011), quoting from *Moore* v. *Dick*, 187 Mass. 207, 212 (1905), reiterated the distinction, concluding that "[t]he manner in which the notice of the proposed sale shall be given is one of the important terms of the power, and a strict compliance with it is essential to the valid exercise of the power." See *Levin* v. *Reliance Co-op. Bank*, 301 Mass. 101, 102 (1938) ("defendant published notice of its intention to exercise its power of sale under the mortgage"); *Bottomly* v. *Kabachnick*, 13 Mass. App. Ct. 480, 483-484 (1982) (defective notice of sale rendered foreclosure sale void).

LBM argues, and we agree, that § 33 prohibits the *initial* actions in the other two methods of foreclosure, i.e., the entry in foreclosure by entry and possession, and the filing of a complaint in foreclosure by judicial action. In contrast, however, the statute clearly proscribes the *final* act in a foreclosure by the power of sale, namely, the sale that terminates the owner's equity of redemption. LBM urges us to adopt an interpretation whereby § 33 is read to consistently prohibit the initial noticing actions in each of the three types of foreclosure processes. But where the language of the statute is clear, we are bound by the Legislature's evident intent that the restriction should operate differently to restrict the exercise of the power of sale, as compared to foreclosure by entry or judicial action. See *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999).

Because we conclude that the motion judge erred as matter of

law, and that G. L. c. 260, § 33, applies to the LBM mortgage, we need not reach the plaintiff's additional claims of error.[11]

*Conclusion.* For the foregoing reasons, we conclude that the LBM mortgage on the property has been discharged as matter of law, pursuant to G. L. c. 260, § 33. The judgment entered on behalf of LBM Financial, LLC, is vacated, and the matter remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[11]LBM advanced several additional arguments in its motion to dismiss, and maintains them on appeal. To the extent that such arguments are not inconsistent with this opinion, LBM may pursue its claims on remand.